## SOUTHERN PAC. CO. v. LAFFERTY.

(Circuit Court of Appeals, Ninth Circuit. July 17, 1893.)

### No. 91.

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER.

In an action against a railway company for the death of a brakeman from injuries caused by his train being struck by two "live" engines, which in some unexplained manner had run away from the railroad yard, it appeared that the engines had been left in the yard at the conclusion of the day's run; that they and another engine were cared for by the only person on duty in the yard, who was also watchman; that after ex-

amining the engines in question, and while such person was working on the other engine, about 75 yards distant, the two engines moved away; that the night was dark and foggy, and objects were not discernible at a distance of over 30 feet, and that instructions had been given to group the engines, but as to the time when given the testimony was conflicting. *Held*, that the railroad company was liable for failure to take reasonable precautions to provide against the engines being put in motion of themselves or by outside persons.

**2.** SAME—RISK OF EMPLOYMENT.

The collision which caused the injuries and subsequent death, having resulted from the failure of the company to take proper precautions, was not one of the risks incident to the deceased's employment.

**3.** SAME—REASONABLE PRECAUTION—QUESTION FOR JURY.

The duty was imposed upon the company of taking reasonable precautions to prevent the engines being tampered with or moved, and whether or not the employment of but one person in the yard to care for the engines as well as to act as watchman was such reasonable precaution was properly submitted to the jury.

**4.** SAME—EVIDENCE—NOTICE OF DEFECT.

Testimony that the fog was so dense on the night of the accident that the watchman could not have had knowledge that the engines were moved out; that the weather had been foggy for two weeks prior; and that the foreman of the men who ran on that division and worked in the locomotive department had been told that the yard was insufficiently manned, two months prior to the accident,—was properly admitted.

**5.** ACTION FOR NEGLIGENCE—PECUNIARY DAMAGE.

The action was brought by the mother of the deceased as administratrix, and the proof showed that she had no other children, and was dependent on him; that at the time of his death he was 21 years old, in perfect health, earning $75 a month, of which he gave her $30; and that prior to this employment he had given her $25 a month. *Held* sufficient proof of pecuniary damage.

In Error to the Circuit Court of the United States for the Southern District of California.

Action by Mollie Lafferty, administratrix of the estate of James Lafferty, deceased, against the Southern Pacific Company, for the death of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Affirmed.

Foshay Walker, (A. B. Hotchkiss, on the brief,) for plaintiff in error.

M. E. C. Munday, (C. L. Russell, on the brief,) for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. On the night of December 26, 1890, James Lafferty, while in the employ of the Southern Pacific Company, plaintiff in error, as a brakeman on a freight train, received injuries in a collision of said freight train with two engines belonging to said company, which resulted in his death. It appears from the evidence that the two engines were, on the evening in question, taken into the yard of the railroad company at Fresno, and there left by their respective engineers, at the conclusion of their day's run, standing upon one of the railroad tracks, with

water in their boilers and fires burning, known in railroad parlance as "live engines." There is no evidence in the record to show in what particular manner the engines were moved from the place where they were left by the engineers; but it is a fact that in some way, in a manner not shown by the evidence, the engines did leave the yard, and got out upon the main railroad track, and ran a distance of about 2½ miles from Fresno, when the collision occurred. This action was brought by the defendant in error, as administratrix of the estate of James Lafferty, deceased, to recover damages for his death, which it is alleged was caused by the negligence of the railroad company. It is not claimed by the administratrix that there was any negligence on the part of any of the employes of the railroad company, or that any of the railroad tracks or switches, or that the engines, or either of them, were in any manner defective.

The only question that was submitted to the jury, in so far as the question of negligence upon the part of the railroad company was concerned, was as to whether or not it was negligent in not taking the necessary, proper, and reasonable precaution to guard the engines left upon its tracks in Fresno. As bearing upon this question it was shown that three engines were usually left in the yards at night, sometimes four; that on the night in question there were three,—two road engines and one switch engine; that one of the road engines was left on the tank track; that the others —which were afterwards moved out upon the track—were left on the turntable track, about 30 feet apart, and about 75 yards distant from the engine on the tank track; that one Riley was employed by the company to watch all the engines at night. Riley testified that on the night in question he "was to take care of the two engines, to keep fire and water in and wipe another engine, get the three ready for morning, * * * or whatever time they were called for;" that he had partially cleaned the engine on the tank track, and then examined the two engines on the turntable track, saw that they had suffcient fire and water in them to last for at least three hours, and then left them, and went back to the other engine, and continued wiping it for about half an hour or more, and then heard of the accident, which was the first knowledge he had that the two engines had been moved away. It was also shown that the night was dark, and so foggy that a person could not see objects at a distance of over 30 feet or thereabouts. There was evidence tending to show that the engineers were instructed to group the engines together, and that they failed to do so on the night in question. There was some question raised as to the time when these instructions were given. Riley testified that he had not been informed of such instructions until after the accident.

It is contended by counsel for the railroad company that the engines must have been put in motion by some evil-disposed persons; that, if there was any negligence, it was not the negligence of the railroad company, but the carelessness or negligence of the

coemployes, either of the watchman or the engineers who failed to obey their instructions in grouping their engines together, who were fellow servants with the deceased; and that for this reason the court erred in refusing to instruct the jury, as requested by them at the close of the testimony, to find a verdict in favor of the defendant, (plaintiff in error.)

The court instructed the jury that the railroad company was not an insurer of the lives or limbs of its employes, but was bound to exercise ordinary care and reasonable precaution for their protection; that Lafferty, (the deceased,) when he accepted the employment of the company as a brakeman, undertook all the risks that naturally appertained to the business; that the engineers who left their engines in the yard at Fresno, and Riley, the watchman, were fellow employes of the brakeman, and for their negligence, if any was committed by them, the railroad company would not be liable. After referring to the conflict in the testimony as to the time when the orders were given to the engineers to group their engines together,—whether before or after the accident,—and also as to the purport of such orders, and leaving these questions of fact to be determined by the jury, the court further instructed the jury as follows:

"If you should find that those engineers were instructed to group their engines together in the yard after completing their day's run, then you are to consider the case as if all three of the engines on the night in question were grouped together; and then you are to say whether or not, in that aspect of the case, the appointment by the railroad company of a competent watchman (because there is no claim that Riley was not competent, nor is there any claim that he did not perform his duty in all respects) to look after those engines, and see that they were not tampered with, or moved from their place, was a reasonable precaution to be taken by the company. They were obliged to exercise ordinary care to see that no damage came, no injury resulted to its employes. Now, was that reasonable, in view of all those facts and circumstances? They were not bound to insure against any accident, but to exercise a reasonable caution; and, under those circumstances, it is for you to say whether or not the appointment of a competent watchman and rubber of or wiper of the engines was such a reasonable precaution."

We are of opinion that the court did not err in declaring that the law imposed upon the railroad company the duty of taking reasonable precautions to see that the engines left upon its tracks at night in the yard at Fresno, with water in the boilers and fires burning, were not tampered with or moved; and that the court properly submitted to the jury the question whether or not the employment of only one watchman to perform that duty, it being also required of him to wipe the engines and put them in proper order for service the next day, was a reasonable precaution.

The general rule is that a person who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of his employment, but this rule is subject to many well-known and clearly established qualifications, and, among others, it is well settled that the master should not expose his employes, when conducting and carrying on

his business, to perils or hazards against which they might be guarded by ordinary diligence and reasonable precautions on his part. The master is bound to exercise the care which the exigencies of the business in which he is engaged reasonably requires for the protection of his employes. Hough v. Railway Co., 100 U. S. 213. Applying these principles to the particular facts of this case, we are of opinion that the railroad company would have been negligent to have allowed its engines to remain upon its tracks in the yard at Fresno without taking some precautions to provide against their being put in motion of themselves, or by the act of careless, thoughtless, or evil-disposed persons. Live engines, thus placed, without any person to guard or take charge of them, are liable to be interfered with; and if, from any of the causes before mentioned, they should be started in motion, and run out upon the main track, and continue in motion, they would, in the very nature of things, become engines of great danger, imparting unusual peril and hazard to the lives and limbs of all the employes of the company who might be in charge of other engines and cars upon the main track, in the regular course of their employment, in conducting the business of the railroad company. The liability of preventing this peril rested with the company, and it was for the jury to determine as a question of fact whether the employment of Riley as a watchman, with the additional duties imposed upon him, was a reasonable precaution upon the part of the company. It was conceded that the employment of one watchman would have been sufficient to have properly guarded the engines if they had been grouped together on one track, and no other duty assigned to him; but the contention of the defendant in error is that one man—no matter how competent, trustworthy, and careful—could not properly guard the engines, and at the same time perform the duty of wiping them and putting them in order. Whether the company did employ sufficient means to reasonably care for the safety of its employes was a question of fact correctly left to the jury, under proper instructions as to the law, to decide.

In Patterson on Railway Accident Law (page 39) it is said that, where the plaintiff's injury can be traced to negligence on the part of the railway as its primary and proximate cause, the concurrence of the negligence of a person unconnected with either the railway or the person injured will not relieve the railway from responsibility for the consequence of its negligence. This general doctrine is asserted in many cases. One of the latest illustrations of this doctrine is to be found in the case of Smith v. Railroad Co., 46 N. J. Law, 7, where a railway was held liable for injuries caused by collision resulting from the movement of certain cars which had been negligently left on a siding in such a situation that a wrongdoer could readily throw them on the main line. In Flike v. Railroad Co., 53 N. Y. 549, the question as to the duty of railroad companies to employ sufficient workmen to properly conduct their business, and their liability where accidents occur on account of their negligence in this respect, is dis-

cussed at considerable length. The plaintiff's intestate in that case was a fireman employed upon one of the defendant's freight trains. Another freight train accidentally became detached, and a portion of the cars ran back and collided with the train on which plaintiff's intestate was employed, by means of which collision he was killed. The testimony tended to show that the detached freight train was deficient in brakemen; that there were only two brakemen, when the usual number was three; and that, if the third brakeman had been aboard, he would have been stationed upon the runaway cars, and could have controlled their impetus, and thereby prevented the accident. The court held that the railroad company was negligent in starting the freight train without sufficient help. The company sought to relieve itself from liability by showing that it had employed one Rockafeller as a head conductor, whose duty it was to make up the trains, hire and station the brakemen, and dispatch the trains, and that he had employed a third brakeman to go out upon the train in question, but that this person so employed failed to get aboard the train by reason of his oversleeping; and it was argued for the company that for this reason the accident which occurred must be attributed to his negligence in not boarding the train. In reply to this the court said:

"The hiring of a third brakeman was only one of the steps proper to be taken to discharge the principal's duty, which was to supply with sufficient help and machinery, and properly dispatch, the train in question; and this duty remained to be performed although the hired brakeman failed to wake up in time, or was sick, or failed to appear for any other reason. It was negligent for the company to start the train without sufficient help. The acts of Rockafeller cannot be divided up, and a part of them regarded as those of the company, and the other part as those of a coservant merely, for the reason that all his acts constituted but a single duty."

In Booth v. Railroad Co., 73 N. Y. 38, which arose out of the same accident as the Flike Case, the same principles were applied. The trial court submitted the question to the jury to determine from the evidence whether two brakemen were sufficient on the first train, or whether three brakemen were necessary, for its proper management; and, if they should find that three brakemen were necessary, submitted to them the further question whether the absence of the third brakeman caused the injury, and charged them that, if both of these facts were found for the plaintiff, he was entitled to recover. These instructions were sustained by the appellate court, and it was held to be the duty of a railroad company to see that there are a sufficient number of brakemen aboard a train when it starts upon its trip, and that, if this duty is neglected, and an injury to a servant results therefrom, without contributory negligence on his part, the company is liable, although the immediate negligence in starting the train without sufficient help was that of a coservant. Both of these cases were decided upon the application of the familiar principle of law, which is clearly and distinctly stated by the supreme court of the United States in Hough v. Railway Co., supra, that the master is liable to the servant for an injury

caused by the master's own negligence. It is true that in the cases referred to this principle was applied to trains put in motion by the railroad company; but it seems to us that the general doctrines therein announced are equally applicable to the facts of this case. It is the duty of a railroad company to see that its locomotive engines, after their run, are left in a place of safety. If left where they are liable to be put in motion by the careless, negligent, or willful act of outside parties, it is as much the duty of the railroad company to see that they are properly guarded to prevent accidents from occurring as it is to see that a sufficient number of employes are put on board the trains set in motion by its own orders. The company is bound to take ordinary care to prevent such engines from running out from the side tracks or turntable tracks, where they are left, onto the main track, of their own motion, or from being run out by any interference of outside parties. This duty it owes to its employes on trains regularly upon the main track, in order not to expose them to the extra risks of danger from accidents which might otherwise be liable to happen. The moving of such engines at such a time and in such a manner from the side tracks is not one of the ordinary risks incident to the business in which Lafferty, the brakeman, was engaged.

Mr. Justice Field in delivering the opinion of the court in Railroad Co. v. Herbert, speaking of the duty of railroad companies to have agents to look after their cars, and see that they are in good condition, said:

"If no one was appointed by the company to look after the condition of the cars, and see that the machinery and appliances used to move and to stop them were kept in repair and in good working order, its liability for the injuries would not be the subject of contention. Its negligence in that case would have been in the highest degree culpable." 116 U. S. 652, 6 Sup. Ct. Rep. 590.

We cannot say as a matter of law that leaving live engines on a side track connected with the main track by switches, without any watchman to look after them, or taking any precaution to avoid their being moved by any one, is not negligence; and if it be true, as we think it is, that reasonable precaution must be taken by the railroad company to prevent the happening of such accidents as would be liable to take place from such negligence, it necessarily follows that the court did not err in submitting the question to the jury whether or not ordinary and reasonable care was exercised by the company in the employment of a watchman whose duty it was to also wipe the engines. To quote the language of the supreme court in Jones v. Railroad Co., 128 U. S. 445, 9 Sup. Ct. Rep. 118:

"We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others."

In Railway Co. v. Ives, 144 U. S. 417, 12 Sup. Ct. Rep. 679, the court said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reason-

able and prudent, and what shall constitute ordinary care, under any and all circumstances. * * * What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

See authorities there cited. Also Railroad Co. v. Foley, 3 C. C. A. 589, 53 Fed. Rep. 462.

It is next claimed that there was no proof of any pecuniary damage to plaintiff as administratrix of the estate of James Lafferty, deceased. Upon the question of damages the court, at the request of counsel for the railroad company, instructed the jury as follows:

"If you find any liability on the part of the defendant for the accident in question, in assessing plaintiff's damages, should you find she has sustained any, you must limit the amount of your verdict to mere pecuniary loss to plaintiff by reason of his death. This is not an action by a mother for the death of a minor child, but is an action by the administratrix of the estate of a deceased adult. You cannot give any damages whatever because of the sorrow or mental suffering of the mother on account of his death, nor for any suffering of the deceased. If plaintiff was not pecuniarily damaged by reason of his death, she is not entitled to any damages. If she was pecuniarily damaged, she is only entitled to the extent of such actual pecuniary damage, if any has been shown."

This instruction is conceded to be within the principles announced by the supreme court of California in Morgan v. Southern Pac. Co., 95 Cal. 510, 30 Pac. Rep. 603, and is admitted to be correct. The contention of counsel is that under the proofs and the instruction the jury erred in finding any damages. The testimony upon this point shows that the administratrix is the mother of the deceased; that she had no other children, and depended upon him for her support; that this son at the time of his death was 21 years old, in perfect health, and was at the time receiving $75 per month; that he had been working for the railroad company as a brakeman for about 4 months, and during that time he gave to his mother $30 each month out of his wages; that prior to the time of his employment by the railroad company he was employed in different vocations at wages of about $60 per month, and then gave his mother about $25 per month. Upon this evidence it is claimed that it is clearly shown that the plaintiff in the court below, as the administratrix of his estate, was not damaged, because, had the son lived and pursued the same course, "he would have left no estate whatever." This contention furnishes absolute proof of its unsoundness. The testimony shows that the son, out of his wages, had been able to save $30 per month. The fact that he gave this amount to his mother was creditable to him, and shows, as clearly as any proof could, that his life was of a pecuniary value to the mother. The

method of estimating the pecuniary damages in cases of this character is, at best, somewhat problematical, and depends to a great extent upon the sound judgment of the jurors as to what would be just, reasonable, and proper under all the circumstances, taking into consideration the age of the deceased, his condition of health, his employment, and reasonable expectations of life.

The only other questions discussed by counsel relate to the admission of certain testimony to the effect that the fog was so dense on the night of the accident that the watchman could not have heard or seen anybody move the engines out, if they were moved out by anybody; that it had been foggy weather for over two weeks prior to the accident; that the attention of the foreman of the men that ran on that division and worked in the locomotive department had been, about two months prior to the accident, by one of the engineers employed by the company, called to the fact that the yard at Fresno was insufficiently manned. There was no error in admitting this testimony.

The judgment of the circuit court is affirmed, with costs.