In re CALIFORNIA NAV. & IMP. CO.

(District Court, N. D. California. September 3, 1901.)

No. 11,801.

1. CARRIERS OF PASSENGERS—INJURY TO PASSENGERS—PRESUMPTION OF NEGLIGENCE.

The explosion of a steam drum on a steamer, by which passengers were injured, is prima facie evidence of negligence on the part of the carrier in a proceeding to recover for such injuries.

**2.** SAME—PASSENGER RIDING ON PASS.

 The obligation of a carrier as to the care required for the safety of a passenger is precisely the same as to a passenger riding on a free pass as to those who pay fare, in the absence of a special agreement by which he assumed the risk of injury from the negligence of the carrier or its servants.[1]

**3.** MASTER AND SERVANT—INJURY TO SERVANT—LIABILITY OF MASTER.

 In an action against the owner of a steamboat to recover for the death of a fireman employed thereon through the explosion of a steam drum near which he was working, the fact of the explosion is not sufficient to charge the defendant with liability, but the burden rests on plaintiff to further prove that defendant failed in its duty to exercise reasonable care to make and keep the drum in a safe condition.

**4.** SAME—PLACE TO WORK—FAILURE TO MAKE PROPER INSPECTION.

 A steam drum connected with the boilers of a steamboat exploded, killing a fireman, who was working near. The drum had been in use several years, and the steam pressure at the time of the explosion was less than the boilers were permitted to carry. A short time previously a leakage of the drum had been discovered, but no examination or test was made to discover its cause. *Held*, that the bursting of the drum must be attributed to its having become weakened from some cause, which the evidence tended to show might also have been the cause of the leakage, and that the owner of the vessel, which was the employer of the deceased, was liable for the death under a state statute giving a right of action therefor, on the ground that it failed in its duty to exercise reasonable care to make the drum safe by a proper inspection and repairs.

**5.** SAME—DELEGATION OF DUTY BY MASTER.

 A master cannot relieve himself from liability for the negligent performance of a positive duty, which he owes to a servant in respect to the safety of the place where the servant is required to work, by delegating such duty to others.

**6.** WRONGFUL DEATH—DAMAGES RECOVERABLE—CALIFORNIA STATUTE.

 Under Code Civ. Proc. Cal. § 377, giving a right of action for wrongful death to the heirs or personal representatives of the deceased, to recover such damages "as, under all the circumstances of the case, may be just," the measure of damages in such an action is the probable pecuniary loss to the plaintiff, or those in whose behalf he sues. The mere fact of heirship does not give a right to damages, and where the only heirs of the deceased are collateral relatives only nominal damages are recoverable without proof of actual or probable pecuniary loss.

**7.** ADMIRALTY—ACTIONS FOR PERSONAL TORTS—NOMINAL DAMAGES.

 Nominal damages for personal torts are not awarded by courts of admiralty.

In Admiralty. Proceeding for limitation of liability.

Woods & Levinsky, F. D. Nichol, and W. B. Nutter, for petitioner.

Jacobs & Flack for claimant Susie P. Blunt, administratrix.

Samuel Knight, for claimant Guseppe Foppiano.

William H. Jordan and Jessie Watson, for claimant Johanna Daly, administratrix.

Reddy, Campbell & Metson, for claimant Augustina Brizzolara, administratrix, and Peter Tulan, administrator.

DE HAVEN, District Judge. On November 27, 1898, the steamer T. C. Walker was owned by the petitioner, the California Navigation & Improvement Company, and employed by it as a common carrier of passengers and freight between the ports of San Francisco

---

[1] Rights of person traveling on pass, see note to Chamberlain v. Pierson, 31 C. C. A. 164.

and Stockton, in the state of California; and on that day, while proceeding on her voyage between these ports, the steam drum attached to her boilers exploded, causing the death of certain of her passengers and members of the crew, and injuring others. Actions were brought against the petitioner to recover damages for personal injuries and the loss of life caused by such explosion, and the petitioner thereupon commenced this proceeding, contesting its liability for damages, and at the same time asking for a limitation of its liability, under sections 4283–4285 of the Revised Statutes, and acts amendatory thereof, in the event that the court shall adjudge that it is liable for such damage. The value of the steamer and freight pending has been appraised, under admiralty rule No. 54, at $23,251, and G. Foppiano, a passenger, and the personal representatives of W. A. Blunt, Luigi Brizzolara, passengers, and of John T. Tulan, the master, and Jeremiah Daly, a fireman, on the T. C. Walker, have answered the petition, and presented their respective claims for damages, and the proofs in support thereof.·

1. The boilers and the drum of the T. C. Walker were constructed in the year 1893, and on May 14, 1898, were inspected by the United States inspector of boilers, and a certificate issued by him permitting their use in the navigation of the steamer for a term of one year with a steam pressure of 170 pounds to the square inch. The evidence also tends to show that at the time of the explosion the steam pressure in the boilers did not exceed 157 pounds. It was also shown that a few weeks before the accident a leakage was observed in one of the girth seams of the drum, but no examination was made for the purpose of determining the condition of the drum at that point, or to ascertain the exact cause of such leakage; and the fact that such leakage had been discovered was not brought to the attention of the master of the steamer, or any managing agent of the petitioner. It may be stated as a well-settled principle of law that the obligation of a common carrier of passengers is to carry them safely, unless prevented by some cause against which human foresight and diligence cannot guard. Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115; The City of Panama, 101 U. S. 453, 25 L. Ed. 1061; Railroad Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Shear. & R. Neg. (5th Ed.) § 495. And in the determination of that branch of the present case relating to the claims of Foppiano, passenger, and of the personal representatives of Blunt and Brizzolara, passengers killed, the mere fact of the bursting of the steam drum is prima facie evidence of negligence upon the part of the petitioner or its employés, and casts upon it the burden of proving that such explosion could not have been prevented by reasonable care; that is, by the exercise of the highest degree of care on its part. Caldwell v. Steamboat Co., 47 N. Y. 282; Dunlap v. The Reliance (C. C.) 2 Fed. 249; Boyce v. Stage Co., 25 Cal. 460; Yoemans v. Navigation Co.,.44 Cal. 71. This rule of evidence is based upon the principle "that, where an act takes place which usually, and according to the ordinary course of things, would not happen if proper care was exercised, it is presumed that such care was not observed." Caldwell v. Steamboat Co., 47 N. Y. 282. The voluminous evidence taken before the United States commissioner, upon which this case was submitted for decision, has been fully

considered, and, in my opinion, is not sufficient to rebut the presumption of negligence which the law, in the first instance, imputes to the petitioner from the fact of the explosion. The boilers and drum had been in use for a number of years, and there is nothing in the evidence tending to show that the bursting of the drum was caused by a latent defect therein,—such a defect as could not have been previously discovered by examination and the exercise of that high degree of care which is required of those in charge of machinery of that character when used in vessels engaged in the transportation of passengers. Blunt, one of the passengers killed, was riding on a free pass, but, in the absence of a special agreement by which he assumed all risk of accident from the negligence of the servants of petitioner, the obligation of the petitioner to carry him safely was precisely the same as that which it owed to the passengers who had purchased tickets. The New World v. King, 16 How. 469, 14 L. Ed. 1019; Railroad Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Todd v. Railroad Co., 3 Allen, 18, 80 Am. Dec. 49; Waterbury v. Railroad Co. (C. C.) 17 Fed. 671. It follows from what has been said that Foppiano and the personal representatives of Blunt and Brizzolara are entitled to recover damages from the petitioner.

2. The claim of the administratrix of the estate of Jeremiah Daly, deceased, rests upon principles of law peculiarly applicable to the relation of master and servant. Daly was employed as a fireman on the T. C. Walker, and while engaged in his work was killed by the explosion to which reference has been made. The petitioner, as his employer, owed to the deceased the duty of exercising reasonable care to make the place where he was required to work safe; and this, of course, would include the duty to exercise reasonable care to ascertain whether there was any defect in the steam drum which might endanger his life while at work. "A master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe." Railroad Co. v. Baugh, 149 U. S. 368–386, 13 Sup. Ct. 914, 921, 37 L. Ed. 772, 780. This rule imposes upon the master the duty of exercising "reasonable care in furnishing suitable machinery and appliances for carrying on the business for which he employs the servant, and in keeping such machinery and appliances in repair, including the duty of making inspections, tests, and examinations at the proper intervals." Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597. The master cannot escape from the obligation of this positive duty by the delegation of its performance to an agent or servant employed by him. In the language of the court in Corcoran v. Holbrook, 59 N. Y. 517, 17 Am. Rep. 369:

"As to acts which a master or principal is bound as such to perform towards his employés, if he delegates the performance of them to an agent, the agent occupies the place of the master, and the latter is deemed present, and liable for the manner in which they are performed."

That such is the law upon this point is well settled. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Fuller v. Jewett, 80 N. Y. 46, 36 Am. Rep. 575; Ford v. Railroad Co., 110 Mass. 240, 14 Am.

110 F.—43

Rep. 598. The burden of proving that the petitioner was negligent in the discharge of its duty towards Daly as above defined, and that such negligence was the proximate cause of his death, is upon the administratrix of his estate. Shear. & R. Neg. (5th Ed.) § 222. And the rule is that in actions in which the servant or his personal representative seeks to recover damages from the employer upon the ground of alleged negligence the negligence of the latter is not established by simply proving the naked and unexplained fact of the occurence of the accident which caused the injury complained of. Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; Railway Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Railway Co. v. Salmon's Adm'x, 11 Kan. 83. The reason why further proof is required in such actions to establish the liability of the employer is that an accident may be caused by want of due care upon the part of the injured servant, or solely by the negligence of a fellow servant at the time, in either of which cases the employer would not be liable for the injury. Under the rule stated it was therefore incumbent upon the administratrix of Daly to prove, not only the fact of the explosion, but, in addition thereto, that petitioner was negligent either in the selection of the steam drum in the first instance, or in failing to use ordinary care to keep it in a reasonably safe condition for use, and that such negligence was the proximate cause of the explosion. It is not claimed, and there is nothing in the evidence tending to show, that the drum, when originally placed in the steamer by the petitioner, was not in all respects safe and sound. Was, then, the accident caused by the subsequent negligence of the petitioner in not keeping the drum in a proper state of repair? I think the evidence shows that the explosion was due to the defective or weak condition of the drum. There is no escape from this conclusion without rejecting the uncontradicted testimony of the witnesses Cates and Murray that just prior to the explosion the steam pressure on the boilers was not more than 157 pounds, being 13 pounds less than they were allowed to carry. The bursting of the steam drum under such a moderate pressure of steam shows that it had become weakened from some cause; and the evidence also tends to show that what may have been the result of a weakness or defect, namely, a leakage in one of the girth seams, was observed some time prior to the explosion, and no examination or test was ever made by the petitioner for the purpose of determining its cause. The duty of keeping and maintaining this part of the boilers in a condition "reasonably and adequately safe for use by employés" devolved upon the petitioner, and this, as before stated, included the further duty "of making inspections, tests, and examinations at the proper intervals." Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597. All of the expert witnesses who testified upon the point expressed the opinion that, when the leakage referred to was discovered, a careful examination of the steam drum should have been made without delay, and the cause of the leakage ascertained. Indeed, that prudence required such action is self-evident. If this examination had been made, it is probable that the defective condition of the drum would have been discovered, and such repairs could have been made, or other steps taken, as would have prevented the subsequent explosion.

The failure of the petitioner to make such examination was negligence; and, as the duty of using ordinary care to keep the drum in repair was a positive duty, which it owed to its employé Daly, its non-performance cannot be excused upon the ground that the failure to make the examination was due to the negligence of the engineer or other of its servants, upon whom it had devolved the duty of keeping the boilers in proper repair. It is only necessary to add that it was no part of the duty of the deceased to make an inspection of the steam drum for the purpose of ascertaining its condition, and there is nothing in the evidence tending to show that the explosion was caused by any want of care upon his part. Upon consideration of all the evidence, my conclusion is that the administratrix of Daly is entitled to recover damages against the petitioner.

3. The question as to the amount of damages the claimants are respectively entitled to recover is to be next considered. Guseppe Foppiano was severely injured by the explosion, suffering a fracture of the sternum at the junction of the fourth rib; a fracture of three ribs on the right side and two on the left side; a severe scalp wound; wound and burn of the left leg, and burns on the hands and wrists. These injuries for a time threatened his life, and caused him to be confined to his bed for three or four months. He had not fully recovered when he gave his deposition in February, 1900, and up to that date had not been able to work; but whether or not his injuries are such as to permanently disable him, or disable him for any great length of time, is not shown by the evidence. The burden of proving such disability, if it exists, was upon the claimant for damages. He is 58 years of age. Prior to the accident he was in the enjoyment of good health, and had been for some time employed at wages of from $12 to $14 per week. As the result of his injuries he has incurred expenses amounting to $300, and lost the wages he might otherwise have earned. This claimant is entitled to recover damages in such an amount as will compensate him for his pain and suffering, the expenses he has incurred, and for the value of the time lost by him in consequence of his injuries. In my judgment, he should be allowed damages in the sum of $2,500.

4. Luigi Brizzolara was killed by the explosion. At the time of his death he was 59 years of age, and his life expectancy, according to the American table relating to that subject, was 14 years and 9 months, or thereabouts. He left surviving him a widow and five children, three of whom were minors, living at home. His business was that of a dealer in coal, from which he derived an annual income of $2,000, and his personal expenses were not less than $100 per month. Jeremiah Daly was 42 years of age at the time of his death, and left a wife and eight minor children, the eldest 16 years of age. He was a fireman by occupation, employed at wages of $45 per month. All of this money went to his family, with the exception of his necessary personal expenses, which were small. His life expectancy was 26 years and 9 months. W. A. Blunt, one of the passengers killed, was 47 years of age. He was a laborer, industrious, in good health, and was employed at the usual rate of wages paid for unskilled labor, and at the time of his death was receiving

$1 per day and board. His life expectancy was 23 years, and he left surviving him a wife and four children. John T. Tulan was the master of the steamer T. C. Walker, and was killed by the explosion. He was 43 years of age, and in good health. His life expectancy was 26 years. He left surviving him two brothers and two sisters, and no other heirs. It is stipulated that all of his brothers and sisters are over the age of 21 years, but whether older or younger than the deceased does not appear. He had been employed by petitioner for a period of seven years as master, at a salary of $115 per month. Whether his earnings exceeded his expenditures, and whether he was provident or improvident, does not appear. The right of the personal representatives of Brizzolara, Daly, Blunt, and Tulan to sue to recover the damages claimed in this proceeding is given by section 377 of the California Code of Civil Procedure, which provides:

"When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

This statute does not authorize damages to be given for the suffering of the deceased, nor for grief and sense of bereavement upon the part of the surviving relatives. Only the direct pecuniary loss to the heirs of the deceased can be considered in estimating the damages which may be recovered in actions under this statute. Morgan v. Southern Pac. Co., 95 Cal. 510, 30 Pac. 603, 29 Am. St. Rep. 143, 17 L. R. A. 71. The language of the statute is that "such damages may be given as, under all the circumstances of the case, may be just." This, in effect, means that the damages shall rest in the sound discretion of the court or jury; a discretion to be exercised in view of the fact "that such damages are to be measured by what shall fairly seem the pecuniary injury or loss to the plaintiff." Morgan v. Southern Pac. Co., 95 Cal. 501, 30 Pac. 601; In re Humboldt Lumber Mfrs.' Ass'n (D. C.) 60 Fed. 428. And it is manifest that in reaching a conclusion in relation to the proper sum to be awarded, a conclusion which must be based solely upon a consideration of what the deceased might probably have earned by his labor, or realized from his business in the future, for the benefit of his heirs, the court is necessarily compelled to proceed upon very uncertain data. In the language of the court in Southern Pac. Co. v. Lafferty, 6 C. C. A. 474, 57 Fed. 536, it may be said:

"The method of estimating the pecuniary damages in cases of this character is, at best, somewhat problematical, and depends to a great extent upon the sound judgment of the jurors as to what would be just, reasonable, and proper under all the circumstances, taking into consideration the age of the deceased, his condition of health, his employment, and reasonable expectations of life."

Even if it should be assumed that the deceased would have lived the full period of his life expectancy, it is reasonable to suppose that his later years would have been feeble, and it would be contrary to all experience to assume that he would have been in the constant receipt

of wages while he lived, or, if engaged in business, that he would certainly have met with continued success. In estimating damages, therefore, in this class of actions, the fluctuations of business, if the deceased was engaged in business, and, if not in business, the uncertainty as to what might have been the future condition of his health and ability to perform labor, and of securing constant employment at the present rate of wages, must be allowed due weight, so that, as nearly as possible, the judgment given shall "be just alike to the injured and the injurer." Cheatham v. Red River Line (D. C.) 56 Fed. 248. In accordance with the foregoing views, and upon consideration of all the evidence, damages should, in my judgment, be awarded as follows: To Augustina Brizzolara, administratrix of the estate of Luigi Brizzolara, the sum of $3,000; to Johanna Daly, administratrix of the estate of Jeremiah Daly, the sum of $5,000; to Susie P. Blunt, administratrix of the estate of W. A. Blunt, the sum of $2,700.

5. The administrator of the estate of John T. Tulan is not entitled to recover, as the evidence will not warrant the court in finding that his brothers and sisters, who are his only heirs, have suffered any pecuniary loss by reason of his death. The case of Burk v. Railroad Co., 125 Cal. 364, 57 Pac. 1065, 73 Am. St. Rep. 52, was an action brought by a sister and two brothers of one Burk to recover damages for his death, which was alleged to have been caused by the negligence of the defendant therein; and in construing the section of the statute above quoted the supreme court of California held that in an action brought by collateral heirs of a deceased person to recover damages on account of his death the mere fact that they are such heirs does not tend to show pecuniary damage, and, in the absence of other proof tending to show actual damages, or at least probable loss, resulting to them from his death, the recovery must be limited to nominal damages. The court in that case said:

"It is said the fact that a right to sue is given implies that damages may be recovered although no rights of plaintiff have been violated. Confessedly, plaintiffs had no legal claim on deceased for anything, and he owed no duty to them to accumulate an estate and leave it to them. * * * The majority of men die without much property. Whether the deceased would have succeeded in accumulating, and, if he had been successful, would have left it to plaintiffs, is matter of pure speculation. Such a guess as to probabilities is not, according to settled rules and maxims of the law, proper ground for the award of damages."

So here there is no evidence tending to show that Capt. Tulan was in the habit of saving his wages, or that his brothers and sisters had any reasonable expectation that he would ever give or leave them, or any of them, anything of value. In this state of the evidence, the administrator of his estate would be entitled to recover nominal damages if the action was in a court of law, but in courts of admiralty nominal damages for personal torts are not awarded. Barnett v. Luther, 1 Curt. 434, Fed. Cas. No. 1,025. A decree will be entered dismissing the claim of the administrator of John T. Tulan, and awarding damages to the other claimants in the several amounts above stated, and for costs, and interest from the date of the decree until satisfaction.