## GOWEN v. BUSH.

### (Circuit Court of Appeals, Eighth Circuit. October 5, 1896.)

### No. 535.

1. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—NEGLIGENCE.

Plaintiff was induced by an agent of the defendant to come from another state, and take service in defendant's coal mine. The agent represented that the mine was free from explosive gas and in every way safe. Two or three days after plaintiff began work an explosion occurred, by which he was seriously injured. *Held*, that the representations made by the agent touching the condition of the mine were within the apparent scope of his authority, and admissible against the employer, though made without express authority.

2. MASTER AND SERVANT—FELLOW SERVANTS—PERSONAL DUTY OF MASTER.

When a miner is charged with the duty of going through the mine from time to time and inspecting it, and seeing whether it is free from gas, he is discharging a personal duty of the master, and while thus engaged is not a fellow servant of the other miners.

3. ESTOPPEL BY SILENCE.

A person is not estopped by silence to subsequently deny statements made in his presence, when his silence was the result of physical suffering or semiunconsciousness.

4. EVIDENCE—RES GESTÆ.

Statements made by one of several victims of an accident, three-quarters of an hour after its occurrence, concerning the cause thereof, and the whereabouts at the time of the injured persons, form no part of the res gestæ.

In Error to the United States Court in the Indian Territory.

J. W. McLoud, for plaintiff in error.

William H. H. Clayton (James Brizzolara, James B. Forrester, and James Parks & Son, with him on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The writ of error in this case was heretofore dismissed for want of jurisdiction in this court to hear and decide the case. 18 C. C. A. 572, 72 Fed. 299. It has since been restored to the docket in compliance with the provisions of an act of congress approved on February 8, 1896 (29 Stat. 6, c. 14), and is now before us for determination on the merits. The action was brought by William N. Bush, the defendant in error, against Francis I. Gowen, sole receiver of the Choctaw Coal & Railway Company, the plaintiff in error, to recover damages for personal injuries which the plaintiff below sustained by reason of an explosion in a coal mine located at Hartshorne, in the Indian Territory. The mine in which the explosion occurred was being operated at the time by the defendant, Francis I. Gowen, in his capacity as receiver of the aforesaid company. The plaintiff, William N. Bush, was a common miner in the employ of the receiver, who had worked only $2\frac{1}{2}$ nights in the mine when the explosion occurred. The complaint on which the case was tried charged, among other things, as a ground for recovery, that when the plaintiff took service in said mine it was represented to him by the agents of the receiver who employed him that the mine

was in every way safe, and especially that it was free from explosive gases, whereas, in point of fact, as his employer, the said receiver, well knew, said mine generated explosive gases which rendered it at all times extremely dangerous and unsafe, and subjected persons who were employed therein to great peril. It was also charged by the plaintiff below, in substance, that the dangerous condition of the mine occasioned by the existence of explosive gases was wholly unknown to him up to the time that the explosion occurred, and that he sustained the injuries complained of as the result of being induced to go to work in said mine, believing it to be safe and free from explosive gases, without any fault or negligence on his part which directly contributed to the explosion. There was a trial, and a verdict in favor of the plaintiff below.

The first error that has been assigned for our consideration is that the trial court erred in failing to direct a verdict for the defendant below. The argument in support of this assignment is founded upon the claim that there was no evidence before the jury tending to show that the defendant had been guilty of any violation of duty, or that he was in any respect negligent. We think, however, that this point is untenable, and should be overruled. The record discloses that there was evidence before the jury which tended to show that the plaintiff was a miner of some 10 years' experience, who had always been accustomed to work in mines that did not generate gas in explosive quantities; that he had been induced by an agent of the receiver, by the name of Gabe Gideon, to come from Calhoun, Mo., where he resided, to Hartshorne, in the Indian Territory, for the purpose of taking service in a new mine at that place which had recently been opened by the receiver, and was being worked both by night and by day, and that he had only arrived at said mine and taken service therein about three days before the explosion occurred; that representations were made to him at his home in Missouri, by the receiver's agent, for the purpose of inducing him to come to Hartshorne, to the effect that the mine at that place was free from gas, and was perfectly safe, and that similar representations were made to him by the assistant superintendent of the mine after his arrival at Hartshorne, before he went to work. There was further evidence tending to show that the mine in question did generate explosive gas in considerable quantities; that this fact was known to the agents of the receiver who had immediate charge and supervision of the mine; and that the plaintiff was seriously injured by an explosion of gas in the mine, which took place about the middle of the third night that he worked therein, before he had become acquainted with its condition and the dangers incident thereto. As there was testimony before the jury tending to establish these facts, it is manifest that the court would have erred in withdrawing them from the consideration of the jury on the theory that they constituted no proof of culpable negligence. The doctrine is well settled and elementary that it is a master's duty to notify his servant of any hidden defect in the place where the latter is expected to work which increases the ordinary risks of the employment, and to advise him of any latent danger which may attend the doing of any work which the servant

is called upon to perform, provided the defect or the danger in question is known to the master and is unknown to the servant. A master violates his duty and is guilty of culpable negligence whenever, without warning, he exposes his servant to a risk of injury which is not obvious and was not known to the servant, provided the master himself was either acquainted with the risk or in the exercise of ordinary care ought to have been acquainted with it. Baxter v. Roberts, 44 Cal. 187; Whart. Neg. §§ 209–211; Shear. & R. Neg. (4th Ed.) § 203; Bailey, Mast. Liab. p. 111. In the present case there was evidence which at least tended to show that the defendant not only failed to warn the plaintiff of the known presence of gas in the mine in such quantities as might cause an explosion, but that the plaintiff was thrown off his guard, and not led to expect the presence of gas in dangerous quantities, by the assurance of those who employed him that the mine was safe and free from gas. We think, therefore, that the evidence above referred to made a case which entitled the jury to decide whether the defendant was in fact negligent, and whether his negligence was the proximate cause of the plaintiff's injuries.

In this connection it will be as well to notice another error which is assigned to the action of the trial court in admitting testimony concerning the representations that were made to the plaintiff at his home in Calhoun, Mo., by Gabe Gideon, the receiver's agent, to the effect that the mine where the plaintiff and his associates were expected to work was safe and free from gas. It is claimed by the plaintiff in error that the proof of these representations was inadmissible for the reason that Gabe Gideon had no authority to make them. It is not denied that he was authorized by the receiver to go to Calhoun, Mo., and solicit the plaintiff and some other miners to come to Hartshorne for the purpose of obtaining employment; neither is it denied that his expenses for making that trip were paid by the receiver. The objection to the testimony is that he was not authorized to make a hiring contract, nor to make representations as to the condition of the mine in which the men would be expected to work. We think that this objection to the testimony is untenable. It being conceded that Gabe Gideon was authorized by the receiver to induce or solicit the plaintiff and other miners to go to Hartshorne for the purpose of obtaining work, and that his expenses in making the trip were paid by the receiver, it follows, we think, that it was within the apparent scope of the agent's authority to make representations touching the condition of the mine. Laborers who were thus solicited to go some distance from their place of residence into an adjoining state, in pursuit of a job, would naturally desire to know something about the character of the work at that place, the wages that they would probably earn, and, if they were to work in a mine, they would doubtless desire to know something about the condition of the mine and the risks that they would be likely to incur in working in it. They would naturally assume that the agent of the employer was authorized to give information with reference to such matters. We think, therefore, that the representations made by the agent touching the condition of the mine, as a means of inducing

the plaintiff and others to go to Hartshorne, were within the apparent scope of the agent's authority, and that they were admissible against the employer, even though he had not expressly authorized the agent to make them. It is a well-known rule that a principal is always bound by the acts of his agent that are within the apparent scope of the agent's powers, although such apparent powers may have been limited by secret instructions of the principal that were not communicated to those with whom the agent dealt.

It is further assigned as error that the trial court refused to give two instructions which were asked by the receiver, which instructions were to this effect: That two of the receiver's employés, to wit, John Murphy and James Scarratt, were fellow servants of the plaintiff; and, if the explosion was occasioned by the negligence of either of these men in failing to discover the presence of gas in portions of the mine other than the place where the plaintiff was at work, then the defendant was not liable to the plaintiff for such neglect on the part of these men. A sufficient reason why neither of these instructions should have been given in the form in which they were asked is found in the fact that, in so far as the duty was devolved upon these men (John Murphy and James Scarratt) of going through the mine from time to time and inspecting it, and seeing whether it was free from gas, they were discharging a personal duty of the master which he owed to all the miners who were at work in the mine, and while discharging such personal duty of the master, these men were not fellow servants of the plaintiff, no matter what relation they may have occupied towards him when they were engaged in the performance of other and different duties. An obligation rests upon the master to exercise ordinary care in providing a reasonably safe place for the servant to work, and also to use ordinary diligence in keeping it thereafter in a reasonably safe condition. This is a personal duty of the master, which he cannot devolve upon another in such a way as to relieve himself from liability in case the duty is not performed or is discharged in a negligent manner. Railway Co. v. Jarvi, 10 U. S. App. 439, 447, 3 C. C. A. 433, 435, and 53 Fed. 65, 67, and cases there cited. Moreover, as this court, speaking by Judge Sanborn, said in that case:

"The care and diligence required of the master are such as a reasonably prudent man would exercise under like circumstances in order to protect his servants from injury. They must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. Obviously, a far higher degree of care and diligence is demanded of the master who places his servants at work digging coal beneath overhanging masses of rock and earth in a mine than of him who places his employé on the surface of the earth, where danger from superincumbent masses is not to be apprehended."

It is evident, we think, that the instructions in question were faulty, and ought not to have been given, for the reason that they exempted the receiver from responsibility for the negligent performance of one of his personal duties, to wit, the duty of properly inspecting the mine, and seeing that it was kept in a reasonably safe condition.

Complaint is further made of the action of the trial court in excluding certain admissions or statements said to have been made by Henry Zeller to Michael E. Burke, about three-quarters of an hour after the accident occurred; also of its action in excluding statements said to have been made by said Henry Zeller, in the presence of the plaintiff, to John Murphy, the morning after the accident. With reference to the statements said to have been made to John Murphy in the plaintiff's presence the morning after the accident, it is sufficient to say that the record recites that the proof of such statements was excluded by the trial court because the plaintiff, William Bush, was at the time "unconscious, or in such a state of semi-unconsciousness and in such a physical condition as not to be estopped by his silence." There is nothing in the present record which shows that he was not in the condition last described, and for that reason the testimony was properly excluded. The admissibility of the other statements or admissions above mentioned is urged upon the ground that they formed a part of the res gestæ, and also on the ground that in making them Henry Zeller acted as the agent of the plaintiff. There was no testimony in the case, however, so far as we can discover, which would warrant the conclusion that Henry Zeller, or any other person, was the agent of the plaintiff for the purpose of making admissions or statements after the accident as to how the explosion had been occasioned. Besides, the statements in question were not so related to the explosion as to make them a part of the res gestæ. A brief statement of the circumstances under which the alleged statements were made is quite sufficient, we think, to justify the latter conclusion. About three-quarters of an hour after the explosion occurred, four men who had been badly burned and otherwise injured by the explosion had been taken out of the mine, and were lying in the engine house at the mouth of the shaft. Among the number were Henry Zeller and the plaintiff, William Bush, the latter of whom was evidently in great agony from the burns which he had received, if he was not entirely unconscious. Michael E. Burke, one of the defendant's witnesses, inquired of Henry Zeller how the accident occurred, and he undertook, as it seems, to give an account of the explosion, and where the four victims of the explosion were when it occurred. The statements thus made were clearly a narrative of a past transaction, and in no sense a part of the res gestæ. Railway Co. v. McLelland, 27 U. S. App. 71, 10 C. C. A. 300, and 62 Fed. 116; Association v. Shryock, 20 C. C. A. 3, 73 Fed. 774, and cases there cited. The trial court, therefore, did not err in excluding such testimony.

Some other errors have been assigned, based on the ground that the trial court erred in refusing to give several instructions which were asked by the defendant below, but were not given in the precise form in which they had been formulated. Without setting out these instructions in detail (which would subserve no useful purpose), it is sufficient to say that we have examined them in connection with the charge which was given by the trial court, and in view of such comparison we are satisfied that, in so far as the several instructions in question stated correct propositions of law, they were substantially

embodied in the trial court's charge to the jury. No error was committed, therefore, in refusing to give these instructions in the precise form in which they were asked.

The only other assigned error which we deem it necessary to notice is an exception which was taken to certain remarks that were made by counsel for the plaintiff below in his closing address to the jury. That portion of the argument to the jury to which an exception 'was taken, and the exception itself, appear in the record in the following form: ·

" 'Now, as to the question of damages. There can be no question as to our right to recover. What is to be the damages? We have sued for $10,000. That sounds to us, of course, like a pretty good sum, but is there money enough in the depths of the earth, have the mines ever produced enough wealth, to compensate a man for being placed in the condition of this man? Twenty-nine years of age, strong, vigorous, a happy husband of a loving wife, the father of two fine children, called upon to support himself and his family by the labor of his hands and the sweat of his face, with no earthly power by which he could support himself, placed in the condition he is in, besides the mortification of having to go disfigured as he is through life. Now, I am not a very good-looking man. I sometimes wish I were; yet I would not have that little good looks I have taken from me, and be compelled to totter through life disfigured, distorted, crippled,—I can hardly use terms strong enough,— like this man. is, for all the gold in the world. He has a right to be paid for his mortification; he has a right to be paid for his mental suffering; for his physical suffering; for the suffering that was endured by the frying and the sizzing and the burning of his flesh upon that occasion; for every hop that he makes upon his poor, lame leg; he has a right to be paid for every scar upon his body; for every minute of time he is thrown out of employment; for the mental suffering that has been put upon him by this company. The mortality table shows that he has an expectancy of life of 36 years. The proof shows that he is totally disabled for working, and, at the rate of $2.00 a day for that length of time, would make twenty-two thousand and some hundred dollars he would be entitled to under the proof. But, say he is not totally disabled, that he has one-half the power he had before this terrible thing came upon him, and you have over $11,000, nearly $12,000, to say nothing of the suffering to his body and the mental suffering of his mind. This is an easy thing, and you can count it up for yourself. We say the amount sued for is reasonable, and we ask you to give us the whole amount. We believe we are entitled to it, and shall feel disappointed if we do not get it.'

"To which language of counsel for plaintiff, defendant objected as improper and prejudicial to the defendants, and as not stating the legal and proper rule for the measure of damages."

There are several reasons, we think, why this exception is not sufficient to warrant a reversal of the judgment. In the first place, the exception as taken goes to all that was said in the paragraph above quoted, and very much of what was thus said did not transcend the limits of legitimate argument to a jury. Counsel was entitled to comment on his client's condition, the nature and extent of his disabilities and sufferings, and to impress upon the minds of the jurors the inevitable effect of the injuries that had been sustained. To this extent, no doubt, the remarks made by counsel were in the line of his duty, and not subject to criticism; and we have heretofore held, following a well-settled rule on that subject, that in stating an exception to a charge, some portions of which are correct and some incorrect, the exception, to be tenable, must point out the particular error complained of, and not be addressed to the charge

as a whole. McClellan v. Pyeatt, 4 U. S. App. 319, 1 C. C. A. 613, and 50 Fed. 686. The same rule may be properly applied to an exception taken to the remarks of counsel. Such exceptions should be made specific, so as to advise both court and counsel in what respect the line of argument is deemed objectionable or unfair. But let it be conceded that it appears with sufficient certainty that the exception was aimed at the closing paragraph of the above excerpt, in which counsel for the plaintiff below referred to his client's expectancy of life, and contended for an assessment of damages based on that expectancy, yet even in that event we do not think that the language employed would justify a reversal of the case. It will be observed, taking all that was said into consideration, that counsel for the plaintiff below merely referred to the nature of his client's injuries, sufferings, and physical condition, and to his age, expectancy of life, and earning capacity (all of which were facts in evidence), and, in view of such considerations, contended before the jury that the sum sued for was reasonable in amount, and that his client was justly entitled to the amount of damages claimed in his complaint. As the sequel showed, however, the jury did not regard the sum sued for as reasonable, and were not influenced by the appeal that was thus made to them, for they only allowed the plaintiff one-half of the amount claimed. It is apparent, therefore, that the language complained of did no harm, even if it was subject to criticism. In support of the assignment of error now under consideration we have been referred to a previous decision of this court in the case of Railway Co. v. Farr, 12 U. S. App. 520, 528, 6 C. C. A. 211, and 56 Fed. 994. We adhere to what was there said and decided, but the case referred to and the one now in hand are not parallel. In the former case counsel for the plaintiff stated to the jury, in substance, that they should assess the plaintiff's damages by finding out what amount he could earn in a month, then multiply that by 12, and then multiply the latter amount by the number of years constituting his expectancy. The direction thus given to the jury by the plaintiff's counsel was objected to by opposing counsel, and in overruling the objection the trial court practically approved the direction that had been given to the jury by saying, "That is a fair argument." We held that to be a manifest error, but no such case is made by the present record.

It results from what has been said that we find no material error in the proceedings of the trial court, and the judgment of that court is accordingly affirmed.