WOOD v. LOUISVILLE & N. R. CO.

(Circuit Court, W. D. Tennessee, E. D. June 2, 1898.)

No. 3,130.

1. NEGLIGENCE—CATTLE CHUTES.
    A railroad company is negligent in constructing a cattle chute so close to the track that a brakeman, on the ladder of a passing car, may be struck by it.

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.
    A brakeman who is struck by a cattle chute, while climbing the ladder of a passing car, is not negligent, although he did not see the chute until he was struck.

3. PERSONAL INJURY—EXCESSIVE DAMAGES.
    A verdict for $8,000 damages for the loss by a railroad brakeman of one foot and four toes on the other is excessive.

This was an action by Horace J. Wood against the Louisville & Nashville Railroad Company to recover damages for personal injuries. There was a verdict for plaintiff for $8,000, and defendant moves for a new trial.

The plaintiff was a switchman on the Louisville & Nashville Railroad, and had been so engaged for about three months on a gravel train. Being transferred to the position of middle brakeman on a freight train, which was switching cars on the railroad side tracks, and while in the discharge of his duty, climbing one of the ladders to the top of the car, he was raked off by a cattle chute, which was so near to the track that there was not room for his body to pass without being struck in the manner in which it was. The injury crushed the toes of his left foot in such a way that he lost all the toes by amputation, except the great toe, of that foot, and his right foot was crushed entirely off, just above the ankle, so that he is permanently crippled in both legs. There is a dispute in the testimony as to whether the close proximity of the cattle chute to the rails of the track was the result of the original construction, or whether it had become from long disuse so dilapidated that it had got out of plumb, and for that reason was too close to the track. There was also some dispute in the testimony as to the exact distance between the mouth of the chute and the track, and, as the structure has since the accident been torn down, it is impossible to determine with accuracy just the number of feet and inches, the testimony of the witnesses ranging from an estimate of eighteen inches to four feet. Defendant's witnesses swore that this chute was constructed like all other cattle chutes on the line. Whatever the accurate distance from the track was, the fact is that the plaintiff, while climbing the ladder, was knocked off. The structure had been there for a number of years, and had been for some time out of use, but was left standing as described by the witnesses. The plaintiff swears that he did not know the chute was there, had not observed it while at work, and that he did not on the occasion of his injury observe it at all. The jury found a verdict in favor of the plaintiff for $8,000.

J. W. E. Moore, for plaintiff.
A. D. Bright, for defendant.


HAMMOND, J. (after stating the facts as above). The verdict of the jury is conclusive as to the negligence of the defendant company in the construction of this cattle chute. It is not a question of a few inches more or less of proximity to the track, nor is it a question of the different sizes of the men called upon to operate in or near it, as to whether they could comfortably pass between the mouth of the chute and side of the car while the car was being loaded or unloaded from the cattle pens, as described by the witnesses. Neither is it a question of avoidance, in climbing the ladder, of the too great protrusion of the body by the skilful or unskillful use of the ladder. It seems to me quite unreasonable to demand that a brakeman, intently engaged in moving over a running freight train, and climbing the ladders put there for that purpose, shall make a nice calculation of inches as to the protrusion of his body, so as not to strike an obstruction to which his attention is not specifically called, and which is of such a nature that he would not be required to be on the lookout for it unless particularly informed about the danger. The case of a bridge across the road or an overhanging roof presents a different question. Either is a structure the danger of which is always apparent, and against which the brakeman must be constantly on his guard; but these cattle chutes along the road may be located at any place, and the primary duty of every railroad company in their construction is to see that they are not so close to the track as by any possibility to result in such an injury as this. It is only a matter of the length of the bridge that must connect the cattle chute with

the floor of the car which is being loaded or unloaded. Of course, the cattle can be more readily controlled in passing in or out of the car to or from the chute the shorter this distance is, but by giving a few inches of extra space the structure can be so far removed from the track as to provide against raking a brakeman off who is on the ladders, and against the possible inequalities arising out of any narrower or wider cars that may be moving on the track.

Therefore I think there is no doubt, from the proof in this case, that the jury was right in concluding that this structure was too close to the railroad track, and the cases cited by counsel of passing bridges, station houses, railroad frogs, and structures like that are not applicable to the facts of this case, for the reason that there is nothing in the nature and character of the structure itself to make it dangerous, if it is kept far enough back from the track. The truth is that such a structure might be used for years and years in too close proximity to the track without attracting attention, because the unhappy combination of a brakeman on a ladder at the precise moment of passing the cattle chute would occur very rarely, if ever. Unhappily, it did occur in this case. In overhanging bridges or roofs, the danger is obvious, and threatens every time the trains move under them. Of course, if the cattle chute be allowed to fall into dilapidation, or be out of repair, and become loose in its joints, there would be danger of the few number of inches that might have been allowed in the original construction becoming closed by the falling away of the timber from the close-fitting framework, and that is possibly what occurred in this case.

As to the contributory negligence of the defendant, I think, also, that the verdict of the jury was right. It cannot be required of a brakeman that he shall go about upon the line of a railroad upon which he is operating, and lay a foot rule to all the structures of this kind, and see whether or not they be so close as to make it necessary that he should be watchful when he is climbing the ladders, or to avoid taking the ladder until the chute shall have been passed. The fact that no accident of this kind had happened before upon the railroad, and that trains were constantly passing this chute without the development of this danger, brings it directly within the class of what we may call "concealed dangers." This danger was lurking for years without its being known. The constituent element of it was a matter of mere inches, and that, in the very nature of things, could not be detected by ordinary observation. It is an idle struggle to escape the liability for this negligence to impute contributory negligence to the plaintiff under the circumstances of this case. Even if he had been aware of the fact that the cattle chute was there, it does not follow that he was aware of the fact that it was a few inches more or less too close to the track; and he had a right to rely upon and believe that the railroad company would not put it too close to the track, or would not permit the customers whom they allowed to build it to put it too close to the track, to injure their employés. It is a danger that does not probably show itself until an accident like this brings it into prominence, either to the railroad owner who operates the road or to the man who originally construct-

ed it. They were thinking of establishing a clearance for the cars, and not for a man climbing the ladders at the moment of passing the chute. That danger was probably not thought of by anybody; not by the constructors any more than by the plaintiff. It is a danger that might arise, and possibly did arise, in this case, because the car on which he was mounted was wider than ordinary cars; or perhaps the ladder might have been constructed so as to have been further away from the side of the car than in the ordinary construction of ladders. Many differences of this kind might appear to make a danger in this particular conjunction of a brakeman on a ladder and a cattle chute too near the track that would not be observable to any ordinary intelligence or observation.

The case was fairly left to the jury, and they have decided these questions of negligence and contributory negligence against the defendant, and I think properly so. I can see no error in the action of either the court or the jury entitling the party to a new trial upon that ground.

But the difficulty that I have had with this verdict has been that I have thought all along that it was excessive. In the opinions that I have heretofore written upon this subject, which it is not necessary to cite here, it will be found that I have always had the greatest reluctance, in exercising the right or power of the court over a verdict, to set it aside because the amount was too large, and I have never exercised the power where the sum was at all reasonable. It is the province of the jury to determine the amount that will compensate for the injury, and it is a denial of the right of trial by jury to interfere with the exercise of this duty by them. Yet it is also one of the rights of trial by jury that the trial judge shall see that the jury does no injustice by being carried away through passion, prejudice, or undue sympathy, and I think in this case they have been misled by their sympathies for this plaintiff into giving a larger verdict than the facts demand. Sentimentally considered, the loss of life or the loss of a limb is irremedial by any sum of money, but this is not the rule of compensation in such cases. It is not the fair rule of judgment.

I know it is not evidence to go before a jury to prove sums that are ordinarily allowed by accident and life insurance companies for loss of life or limb, and there was no such proof as that before this jury, and no proof before the trial judge upon the subject; but, in reflecting upon the question of what is fair compensation for the loss of one's limbs or life, it occurs to me that the common experience of men undertaking to provide for indemnity against accidents resulting in the loss of life or limb may be fairly considered. If the plaintiff had lost his life, I think it is apparent, from his earning capacity and the amount required by him to live, that, in the common experience of switchmen, he would not have been able to earn sufficient money, after paying his living expenses, to provide for himself a policy of insurance for $8,000, upon which he would be able to pay the premiums. He would, from necessity, have had to take a less indemnity and a policy for a smaller amount. He would not be able, fairly and reasonably, to insure his life from his earnings

for the sum of $8,000, nor would he be able to provide the necessary money to insure himself against loss of limb for that amount of money; and perhaps no accident insurance company would have been willing, for any sum of money he would be able reasonably to pay, to have agreed to pay him $8,000 for the loss of his limb and toes, as that loss appears in this evidence. I mention this only as an argument which has force in my mind, at least, in determining the question, how much money would fairly compensate him for the loss he has sustained?

Taking the young man just as we find him in the proof, I think the verdict is more than he could have otherwise provided as an indemnity against this loss, and I think it is very largely more. Reluctant as I am to interfere with the verdict of a jury upon such a matter, I have concluded to grant this motion for a new trial upon the ground of an excessive verdict, unless the plaintiff shall, within 30 days from this date, enter a remittitur of one-half the amount of the verdict. If this is done, there may be a judgment for that amount and the interest since the rendition of the verdict. Ordered accordingly.