## CECIL v. AMERICAN SHEET STEEL CO.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1904.)

### No. 1,231.

1. MASTER AND SERVANT—MINES—TIMBERS—DUTY TO FURNISH—STATUTES.

Rev. St. Ohio 1892, § 6871, requires the owner or operator of every coal mine to keep a supply of timber constantly on hand, and to deliver the same to the working place of the miner, and declares that no miner shall be held responsible for accidents which may occur in the mine where the provisions of such section are not complied with. *Held* that,

since the act did not define the degree of care required of the mine owner in providing timber, such care must be determined by the principles of the common law.

2. SAME—INJURIES TO MINER—FALLING ROCK—DEFECTIVE TIMBERS.

Where a miner was struck by a rock falling from the roof of the mine by reason of the alleged insufficiency of a timber cap furnished to support the roof, plaintiff, in order to recover, was not required to establish demonstratively that the stone would not have fallen, except for the defective condition of the cap, but was only required to introduce proof, direct and circumstantial, sufficient to show that the stone would probably not have fallen, except for the breaking of the defective cap.

3. SAME—PROXIMATE CAUSE—QUESTION FOR JURY.

In an action by a miner injured by the falling of a stone from the roof, whether the alleged defectiveness of a pillar cap furnished to support the roof was the proximate cause of the accident *held* a question for the jury.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This suit was instituted in the court of common pleas for Tuscarawas county, Ohio, to recover damages for a personal injury suffered by plaintiff in error while in the employment of the defendant in error as a coal miner. The action was removed into the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio, held at Cleveland. On the trial of the case, and when all the evidence was in, the court, on motion, directed a verdict for defendant, on which judgment was entered. Exceptions were duly taken, and, to revise the judgment, the case is brought to this court on writ of error.

The work in which the plaintiff was engaged at the time of the accident which caused the injury was that of removing or mining pillars of coal left in branch or side entries to the main entry of what is called a "drift mine" belonging to defendant. As side entries were made or driven, in the progress of the work, large pillars or blocks of coal were left to support the slate or soapstone roof of the entries left by mining and removing the coal on all sides of these pillars. When finally these entries were extended as far as the coal justified, and it was determined to abandon them, the pillars of coal were mined and removed. The plaintiff was engaged in mining one of these pillars, and had been engaged in that particular work for two weeks. While doing this work, it was the miner's duty to prop and support the roof of stone or slate by timber posts placed in an upright position, with a cap piece fixed against the roof. These posts were about 4 inches in diameter, with caps 6 inches wide, 18 inches long, and about 1½ inches thick. These timbers were sent to the miners in the entries, and each miner did his own propping. The miner was furnished with the usual miner's lamp, of about three candle power. On the day of the accident, plaintiff had, on going into the mine, examined or "sounded" the roof in the usual way, and placed in position, as usual, three posts, with caps, from timber furnished and placed conveniently close by the master. After proceeding two hours or more with the work, a piece or slip of stone fell from the roof above, where the mining had just been done, striking plaintiff, and inflicting serious injury. This slip or block of stone weighed about 500 pounds, was 3 feet long, 8 inches wide, and 8 inches thick in the middle, from which it sloped towards the ends, at which it was wedge-shaped.

The plaintiff's case is stated in the petition as follows:

"That, as a part of his duties as such coal miner, he was required to, and did, perform the work of taking out pillars or posts of coal between rooms in said coal mine; and he was also required to keep the roof of said coal mine, at or near where he was working, propped with posts, or timbers and caps, so that said roof would not fall in, thereby endangering the life or limbs of himself or other employés of the defendant.

"Plaintiff further says that it was the duty of the defendant at all times

to furnish plaintiff, at his working place in said coal mine, with good, sound, and substantial timbers and caps, with which to keep said roof propped in a safe and sufficient manner, but the defendant, disregarding its said duties in the premises, at the time hereinafter stated, wrongfully, carelessly, and negligently failed to furnish plaintiff with good, sound, substantial timbers and caps, as it was bound to do, and avers that one of the caps furnished by the defendant to plaintiff, to be used in propping the roof at or near where plaintiff was working in said mine, and so used by the plaintiff, was unsound, rotten, and defective, and wholly unfit for the purposes for which the same was intended, as defendant well knew.

"Plaintiff further avers that on or about the 11th day of November, 1901, while so engaged as a coal miner in said defendant's said mine, said rotten and defective cap broke and gave way, and caused the roof of said coal mine, at and near where plaintiff was at the time working, to fall in, by reason whereof a large stone, with slate, etc., fell on plaintiff, striking plaintiff on his back, and on the spinal column thereof, fracturing the vertebra of plaintiff's spinal column, by reason whereof plaintiff's spinal column and nervous system has been permanently injured, and plaintiff has ever since been sick, lame, and diseased.

"Plaintiff avers that said injuries were caused without any fault or neglect on his part, but wholly on account of the carelessness and negligence of the defendant; that plaintiff had no knowledge whatever that said cap was unsound or defective or rotten; that he used all the timbers and caps furnished him at the time by the defendant to prop said roof; and that, before using the same, he used ordinary care to determine whether the same was sound and fit for the purpose intended."

There was evidence to show that the posts and caps were properly set, in the usual way. About four or five inches of one end of the stone slip which fell rested on the end of the post cap, as appeared by the opening in the roof left by the falling stone. The evidence tended to show that the piece of the cap which broke off was five or six inches long, and was defective, "by being wormy," and was somewhat decayed from exposure to weather, or, as the witnesses say, was "brash wood," and was partly rotten. The break in the cap was a square break across the grain.

The view of the learned judge below appears in the peremptory instruction to the jury, which, taken from the record, is as follows:

"It must be shown, as a part of the plaintiff's case on this theory, that this rock would not have fallen, except for the rottenness of this cap. Now, that is not shown. It is guessed at. It is surmised. But there is the evidence that it was supported by the coal under it, and that, when the coal was removed, it fell, and that it was of certain dimensions and weight. It would be extremely improbable that a board four inches long was destined to support a 500-pound stone of those dimensions. And under the consideration of the testimony, that there is an insufficient amount to show that the condition of the board that broke was the proximate cause of this accident, I cannot escape from the first conclusion that I came to—that it is not shown in such a way but what the court will be bound to set aside a verdict, if the jury said that was the occasion of the accident. And therefore a verdict is directed for the defendant."

Section 6871 of the Revised Statutes of Ohio of 1892, cited as having a material bearing on the case, is as follows:

"The owner, agent or operator of every coal mine shall keep a supply of timber constantly on hand and shall deliver the same to the working place of the miner and no miner shall be held responsible for accidents which may occur in the mine where the provisions of this section have not been complied with by the owner, agent or operator thereof."

Foran, McTighe & Gage and T. H. Loller, for plaintiff in error.
E. K. Wilcox, for defendant in error.

Before LURTON and RICHARDS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after making the foregoing statement, delivered the opinion of the court.

After this somewhat full statement of the case, it does not seem to require extended discussion. It is very clear that this statute imposes on the owner or operator of a coal mine the duty to keep constantly on hand a sufficient supply of timber, without undertaking to declare or define the degree of care which the mine owner or operator must exercise in that regard. The degree of care, therefore, which must be exercised, is left to be determined on common-law principles, and this statute may therefore be put aside without further discussion.

As will appear from the comments of the court below in giving a peremptory instruction for defendant, the ruling was based upon two grounds; the first being that it was necessary for plaintiff to show "that this rock would not have fallen, except for the rottenness of this cap," and, second, that the breaking of the board was not shown to have been the proximate cause of the accident.

In regard to the first proposition, the remark of the court was: "Now, that is not shown. It is guessed at. It is surmised." It is not altogether clear, in view of this language, what was the extent and character of the evidence which it was thought would be necessary to establish a prima facie right to recover. If it had been regarded as legally permissible for the plaintiff to establish by testimony reasonable grounds of presumption or probability as to the cause of the accident, and for the jury to infer from such evidence, direct and circumstantial, that the slip of stone would probably not have fallen, except for the breaking of the defective timber, and that the breaking of the timber support was therefore a proximate cause of the accident, it is very difficult to conceive that it would not at once have been recognized that the question was one of fact, and, as such, required submission to the jury for determination. The view, if entertained, that the plaintiff must, in order to recover, show positively that "this rock would not have fallen, except for the rottenness of this cap," was to require an impossibility. In the very nature of the case, it could never be established demonstratively that the stone would not have fallen, except for the rotten condition of the cap. The case could be determined and disposed of only on the reasonable and stronger probabilities of the situation in the light of all the attending circumstances and conditions. The question was largely one of opinion, based on such justifiable inferences as might be drawn upon reasonable grounds from the facts found by the jury, so far as these were disputed. Such conclusions as might be reached were conclusions of fact, however, and not of law. The issue was one of fact, to be disposed of in a practical and substantial way, and not on the purely speculative theory whether the stone slip might have become loose, and might have fallen, regardless of the fact that the post cap was rotten, or if it had been sound. The proposition that the breaking of the defective timber was the proximate cause of the falling of the stone and of the accident was necessary for the plaintiff to establish, not demonstratively or conclusively, so as to exclude doubt or denial, but probably, and this probability should, on the whole of the evidence, outweigh, by a fair preponderance, the evidence in favor of any other view or probability. Just what caused the stone to fall is

129 F.—35

a question which admits of only an answer in its nature a probability, and involving, in its last analysis, to an extent, matter of opinion. There was certainly evidence tending to show that the breaking of the supporting cap timber caused or permitted the stone to fall.

One of the witnesses in the case (Opphill, a miner of 20 years' experience) was required by the court to express an opinion as to the cause of the falling of the stone, as will appear in the following questions and answers:

"Q. And where was that stone before it fell, with reference to this cap which you say broke? A. Up in the roof. Q. Was any portion of that stone over the piece before it fell? A. It was about half. Q. By the Court: Half of the stone? A. No; just the edge. Q. Just the edge of the stone was over the cap? A. Yes, sir. Q. The rest of the stone was not supported at all? A. I couldn't tell that. Q. There was nothing there to support it, was there? A. No, sir; I don't suppose there would be. Q. Now, what do you say, Mr. Opphill? Did the stone break the cap, or the cap break and let the stone fall? A. *The cap broke and let the stone fall.* Q. What broke the cap? A. The stone, I reckon. Q. And just one edge of that stone—not more than four inches—could be over that cap, and the rest of that whole big stone was outside? A. Yes, sir. Q. Can you tell us what proportion of the weight of that stone would rest upon that cap, before it fell, from the position which you say it occupied? A. You mean the weight of the rock? Q. By the Court: How much of the weight of the rock was on this piece of cap before the stone fell? If it weighed 500 pounds, how much weight of that 500 pounds was on the cap? A. Just the edge of it. Q. How much of the weight would be on that cap? A. I couldn't tell."

So, too, in the testimony of plaintiff, Cecil, the following questions and answers occur:

"Q. Now, you may state what happened, if anything, as you were there working? A. *The timber broke and let the roof cave in on me. The cap broke.* Q. By the Court: What timber? A. The cap on top of the post."

Besides this, there were all the particular circumstances of the situation for consideration, such as the extent to which the stone slip projected over on the edge of the supporting cap or board, and the weight which a board or timber of that thickness, if sound, would probably have supported, and the extent to which this support would have tended to prevent the falling of the stone, the distance to which the stone had been cut away from the prop, and other like circumstances.

In view of the entire evidence found in this record, we know of no doctrine or principle which would sustain the view that, as matter of law, the testimony was insufficient to go to the jury upon the question as to whether the stone slip would have fallen, except for the defective condition of the post cap. We think this was a question of fact on which the plaintiff was entitled to go to the jury.

In the case of Choctaw, Oklahoma, etc., R. R. Co. v. Holloway, 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207, the testimony showed that an engine was being run backward at night by the engineer and fireman, when, on coming upon a trestle, the engine collided with a horse upon the trestle and was derailed, and the fireman caught between the tank and engine, and seriously injured. The engine was not equipped with brakes. There was evidence that the engine could have been stopped more quickly with brakes than without them. One ground on which the charge of negligence was founded was the fact that, when the engineer

discovered the horse, he applied the brakes on the tender successfully, but this was without effect on the engine, which was forced, with its weight and momentum, against the tank or tender. In disposing of the ground on which the defense rested, the court, by Mr. Justice Peckham, said:

"It is insisted, however, on the part of the defendant, that the court erred in not holding that the absence of brakes on the engine was not the proximate cause of the injury, that the presence of the horse on the trestle was the proximate cause of derailing the tender and engine, and that the company was not guilty of any negligence by reason of which the horse came upon the trestle. We think this claim is unfounded, and that the proximate cause of the injury, within the meaning of the law, was the absence of the brakes on the engine. At any rate, there was evidence which made it a question for the jury to say whether the accident would have happened if there had been brakes on the engine, in good order and fit for use. It may be assumed that there was no negligence on the part of the defendant, by reason of which the horse came upon the trestle, and that it was not, therefore, responsible for any damage of which the horse was the sole and proximate cause. We think one proximate cause of the accident was the absence of the engine brakes. The purpose of a brake is to stop the engine more promptly than can be done without it, and, if there had been a brake on the engine, it *would, if used, have probably prevented the accident*. At any rate, there was evidence to that effect. The absence of a brake, which, if present, would have prevented the accident, was therefore a proximate cause thereof."

To same effect is the opinion of this court in Postal Tel. Co. v. Zopfi, 73 Fed. 609, 19 C. C. A. 605.

As will be perceived, it was adjudged that the proximate cause of the accident was a question for the jury, in the consideration of which the jury might infer that, "if there had been a brake on the engine, it would, if used, have *probably prevented* the accident." (Italics in all quotations ours.) In respect of both points, the ruling is, in principle, opposed to the views expressed by the court below on facts similar, in substantial effect and bearing, to those found in this record. In relation to these points, the case of Mexican Cent. Ry. Co. v. Murray, 102 Fed. 264, 42 C. C. A. 334, is also instructive.

It is well settled, and not denied, that, in a case like this, where the servant does the constructive work on an appliance, such as these props, for his own safety, the master's duty is to exercise reasonable care to furnish sound and suitable material and timber for the work, and to make reasonable and proper inspection in that regard. Mexican Cent. Ry. Co. v. Murray, 102 Fed. 264; 42 C. C. A. 334; Texas & Pacific Railway v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, and cases cited.

In the court below, the point whether the defect, if one, was latent or patent, seems to have entirely escaped attention. This is an embarrassing difficulty in the case. Of course, if the defect in the post cap was patent, or such as should have been discovered by reasonable and ordinary inspection, the master would be liable; otherwise not. A brash or defective condition of the timber might be discovered after it was broken across the grain, and thus exposed, which would not be previously discoverable by ordinary and reasonable inspection. It is impossible to deal safely or intelligently with this phase of the case, although the question is suggested by what is found in the record. The

point can be properly considered and disposed of on a new trial only.

The argument for defendant in error is, in part, devoted to an effort to show that the contributory negligence of the plaintiff was so conclusively and plainly evident as to make it a question of law for the court, and it is sought to sustain the ruling in the case on that ground. This defense, however, if relied on, obviously presents an issue of fact to be submitted to the jury.

Our conclusion being that there was error in the withdrawal of the case from the jury, it results that the judgment is reversed, and the case remanded, with directions to set aside the verdict and award a new trial.