\* COALGATE CO. v. HURST.

No. 245.    Opinion Filed January 12, 1910.

(107 Pac. 657.)

1.    MASTER AND SERVANT—Master's Notice of Defect of Appliance—Admissibility of Evidence. It is competent to show that the general superintendent of a mine at or immediately after the installing or adjustment of a fan (and prior to the accident,) to be operated for the purpose of creating a current to carry out of the mine smoke, fumes, foul air, and gases dangerous to the lives of the employees, had notice of a defect in its adjustment.

2.    MASTER AND SERVANT—Assumption of Risks—Negligence of Master. While a person entering voluntarily into a contract of service assumes all the risks and hazards ordinarily incident

---

*Appealed to the Supreme Court of the United States.

to the employment and such as are liable to arise from defects which are patent and obvious to a person of his experience and understanding, he does not ordinarily assume risks arising out of negligence of the master.

(a)  He assumes all the ordinary risks of the employment which are known to him and which would have been known with the exercise of ordinary care to a person of reasonable prudence and diligence in the situation. It is his duty to exercise ordinary care and diligence, and observe and become cognizant of obvious defects in the machinery and working place, and he is chargeable with a knowledge of such risks and defects which would have been known to a person of reasonable prudence and care in his situation.

3.  **MASTER AND SERVANT—Death of Servant—Negligence of Master.**  When it may be inferred by the jury that the defendant in the construction, installing, or operation of the fan had omitted that care in its adjustment and operation to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff.

4.  **EVIDENCE—Res Gestae.**  Statements of plaintiff's intestate's co-employee made between 20 and 30 minutes after the accident, the fan having been readjusted and put in operation so that the current would carry the smoke, fumes. foul air, and poisonous gases out of the mine, in response to the inquiry, "Where is your buddy," with the reply to the defendant's employee, "He is on ahead, dead, all right. My lower limbs are paralyzed. I told him not to fire the shot. but he said he would go ahead and fire it anyhow," are not admissible in evidence as part of the **res gestae.**

5.  **MASTER AND SERVANT—Death of Servant—Proximate Cause —Evidence.**  In an action against a mining company for the death of one of its employees acting in the capacity of a shot firer resulting from injuries caused by smoke, fumes, foul air, and poisonous gases, by a reversal of a fan on account of its not having been suitably adjusted with reasonably necessary appliances for the purpose for which it was installed, there being evidence tending to show that the omitted appliance or appliances were reasonably necessary in its operation for such purposes—held, that a verdict based on the assumption that the omission to suitably adjust such fan with such additional appliance was the proximate cause of the accident was justified by the facts and circumstances.

(Syllabus by the Court.)

*Error from District Court, Coal County; A. T. West, Judge.*

Action by J. W. Hurst, Administrator of Ed. Cleveland, against the Coalgate Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Coalgate Co. v. Hurst.

*E. E. McInnis, A. G. Mosely,* and *C. Porter Johnson,* for plaintiff in error.—Citing: Jones on Evidence, sec. 360; *Regnier v. Territory,* 82 Pac. 509; *Lewis v. State,* 15 S. W. 642; *Freeman v. State,* 46 S. W. 641; *Shaefer v. Mo. Pac. Ry. Co.,* 72 S. W. 154; *Johnson v. State,* 58 Pac. 761; *Union Casualty & Surety Co. v. Mondy et al.,* 71 Pac. 677; *Linderberg v. Crescent Min. Co.,* 33 Pac. 692; *International & G. N. R. Co. v. Anderson,* 17 S. W. 1039; *Lewis v. Burns et al.,* 79 Pac. 778; *State v. Lockett,* 68 S. W. 563; *Pierce v. Van Dusen,* 24 C. C. A. 280; *North American Acc. Ass'n v. Woodson,* 12 C. C. A. 392; *Delaware L. & W. R. Co., v. Ashley,* 14 C. C. A. 368.

*J. R. Wood* and *C. M. Threadgill,* for defendant in error. —Citing: *Railway Co. v. McDade,* 112 Fed. 888, 191 U. S. 96; *Railway Co. v. Holloway,* 114 Fed. 460; *Hayes v. Railway Co.,* 111 U. S. 242; *Railway Co. v. Price,* 97 Fed. 428; *Cecil v. Am. Sheet Steel Co.,* 129 Fed. 545; *Wabash Screen Door Co. v. Black,* 126 Fed. 725; *Railway Co. v. Lafferty,* 57 Fed. 536; *Wood v. Railway Co.,* 88 Fed. 46; *Railway Co. v. Stout,* 84 U. S. 657; *Railway Co. v. Ives,* 144 U. S. 417; *Jones v. Railway Co.,* 128 U. S. 445; *Eddy v. Wallace,* 49 Fed. 806; *Berry v. Railway Co.,* 70 Fed. 194; *Railway Co. v. Burris,* 111 Fed. 887; *Railway Co. v. Parks,* 114 Fed. 161; *Owen v. Bush,* 76 Fed. 353; *Fredenthal v. Brown & McCabe,* 95 Pac. 1115; *George v. Clark,* 87 Fed. 609; *Bunker Hill, etc., Co. v. Jones,* 130 Fed. 818.

WILLIAMS, J. The plaintiff (defendant in error) alleges in his complaint or petition that the defendant (plaintiff in error) during the time intestate served the company as shot firer "failed and neglected to exercise ordinary care and diligence to keep the fan in suitable operation and properly adjusted." It is insisted by the defendant in error that if this fan had been adjusted with reasonable arrangement, this accident would have been averted. The contention is not that the fan was insufficient and was not suitable to do the work for which it was intended, but that the plaintiff in error did not exercise that care and precaution that it should have done to see that the fan was kept suitably adjusted

for operation. As to whether that was done is the crucial point in this case.

1. In the case of *Southern Pac. Co. v. Lafferty*, 57 Fed. 536, 6 C. C. A. 474, the trial court instructed the jury as follows:

"If you should find that those engineers were instructed to group their engines together in the yard after completing their day's run, then you are to consider the case as if all three of the engines on the night in question were grouped together, and then you are to say whether or not, in that aspect of the case, the appointment of the railroad company of a competent watchman (because there is no claim that Riley was not competent, nor is there any claim that he did not perform his duty in all respects) to look after those engines, and see that they were not tampered with, nor moved from their place, was a reasonable precaution to be taken by the company. They were obliged to exercise ordinary care to see that no damage came—no injury resulted—to its employees. Now, was that reasonable, in view of all of those facts and circumstances? They were not bound to insure against any accident, but to exercise a reasonable caution, and under those circumstances it is for you to say whether or not the appointment was such a reasonable precaution."

The Circuit Court of Appeals for the Ninth circuit in approving said instruction, said:

"We are of the opinion that the court did not err in declaring that the law imposed upon the railroad company the duty of taking reasonable precautions to see that the engines left upon its tracks at night in the yard at Fresno with water in the boilers and fires burning, were not tampered with or moved; and that the court properly submitted to the jury the question whether or not the employment of only one watchman to perform that duty, it being also required of him to wipe the engines and put them in proper order for service the next day, was a reasonable precaution. The general rule is that a person who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of his employment, but this rule is subject to many well-known and clearly established qualifications, and, among others, it is well settled that the master should not expose his employees, when conducting and carrying on his business, to perils or hazards against which they might be guarded by ordinary diligence and reasonable precautions on his part. The master is bound to exercise the care which the exigencies of the business in

which he is engaged reasonably require for the protection of his employees. *Hough v. Railway Co.,* 100 U. S. 213 [25 L. Ed. 612] Applying these principles to the particular facts in this case, we are of the opinion that the railroad company would have been negli-- gent to have allowed its engines to remain upon its tracks in the yard at Fresno without taking some precautions to provide against their being put in motion of themselves, or by the act of careless, thoughtless, or evil-disposed persons. Live engines thus placed, without any person to guard or take charge of them, are liable to be interfered with; and if, from any of the causes before mentioned, they should be started to motion, and run out upon the main track, and continue in motion, they could in the very nature of things, become engines of great danger, imparting unusual peril and hazard to the lives and limbs of all the employees of the company who might be in charge of other engines and cars upon the main track, in the regular course of their employment, in con- ducting the business of the railroad company."

This was a reversible fan. The hood to the fan revolved upon an axle, and was fixed so that it would have probably been turned up by the force of an explosive, the end of the hood nearest the air shaft being thrown forward and the other end downward, consider- able weight being on the end nearer the air shaft, against which the force of the explosion would strike. A board, referred to as a "door," is over the other end further away from the shaft to let it down. The force of the explosion striking the end of the hood, it would be raised, carrying the weight with it, and if the force were not sufficient to raise the hood and cause it to revolve more than a quadrant, the weight would carry it down to its usual position and the air current in that event would not be affected. The weight then pressing upon the end of the hood nearer to the air shaft or "door" would be holding down the other end of same. The weight at one end and the door at the other were intended to keep the hood in its usual place, which would revolve as much as a semicircle, but no more. If the force from the explosion was sufficient to raise the weight and cause the hood to revolve more than a quadrant, the hood would be carried on in a revolution to the extent of a semicircle, or until the end of the hood to which the weight was attached would be carried down to, and would then rest upon, the

board or "door" which had been holding the other end of the hood down and in its place, and the revolving of the hood, to the extent of a semicircle, would reverse the air current throughout the mine, which should have been rendered impossible, if reasonably practicable. It is contended this is what occurred on the day that plaintiff's intestate lost his life. While this fan was being installed, the probability of such an accident as the one in question happening was brought to the attention of the general superintendent of the plaintiff in error, and this was shown over its objection at the trial. In this, there was no error. *Baltimore & O. R. Co. v. Henthorne,* 73 Fed. 634, 19 C. C. A. 623; *Wellston Coal Co. v. Smith,* 65 Ohio St. 70, 61 N. E. 143, 56 L. R. A. 99, 87 Am. St. Rep. 547; Sherman & Redfield on Negligence (5th Ed.) pp. 313, 344.

Can it be said that all reasonable and fairminded men, acting honestly and justly, would be forced to the conclusion that this company could not have reasonably foreseen this accident and its consequences? That leaving this reversible fan, constructed as it was, when the shot firing was being done, it evidently having been installed with a view of creating a current and carrying off the gases, fumes, etc., from the mine so as to protect the employees whilst therein, without any protection by a reasonable, additional appliance so as to prevent its being reversed by the force of explosion and run in reverse order, was not negligence? In the case of *Southern Pac. Co. v. Lafferty, supra,* the court said:

"The liability of preventing this peril rested with the company, and it was for the jury to determine as a question of fact whether the employement of Riley as watchman, with the additional duties imposed upon him, was a reasonable precaution upon the part of the company. It was conceded that the employment of one watchman would have been sufficient to have properly guarded the engines if they had been grouped together on one track, and no other duty assigned to him, but the contention of the defendant in error is that one man—no matter how competent, trustworthy, and careful—could not properly guard the engines, and at the same time perform the duty of wiping them and putting them in order. Whether the company did employ sufficient means to reasonably

care for the safety of its employees was a question of fact correctly left to the jury, under proper instructions as to the law, to decide."

In this case, it may be inferred from the record that it was the purpose of the plaintiff in error in installing this fan in the performance of the duty of the master, that it owed to its servants, to cause gases, fumes, and the like to be carried out of the mine by the currents generated by it so as to protect their health and lives. Now, if the master could have reasonably anticipated that explosions which might result from "windy shots" would reverse the fan and cause the currents to be reversed or stopped, the lives of the servants therein becoming jeopardized, is it not a question of fact, then, to be submitted to the jury under proper instructions as to whether the master was required in performing his duties to his servants, to safeguard that fan by a reasonable additional appliance for protection when the shots were being fired? The superintendent who installed the fan had such knowledge, if certain witnesses are to be believed, and that was a question of fact for the jury; and as additional evidence tending to prove this fact, when this explosion occurred, the servant Tate ran for the immediate assistance of the co-servant, Archer, in order that they might readjust the fan and again turn off the current properly so as to protect the lives of the employees within the mine. It may be that the expert, Cameron, testified that it was not reasonably necessary to have a watchman at that time, but this question was to be determined by the jury under proper instructions, and as in the Lafferty Case, *supra,* we are not prepared to say that the finding of the jury on this question in favor of the defendant in error is not sustained by substantial evidence. *N. Y. Elec. Equipment Co. v. Blair,* 79 Fed. 896, 25 C. C. A. 216; *Wabash Screen Door Co. v. Black,* 126 Fed. 721, 61 C. C. A. 639.

2. But did the intestate have knowledge of his danger? Was it such a danger as was hidden from him, and therefore under the circumstances not assumed by him. We are unable to ascertain from the record when this fan was installed, but it, as well as the mine, seems to have been in operation continuously from September, 1904, until the date of the accident in which the intestate lost his

life, and no "windy shots" or explosions occurring, though such shots seem to have been fired almost daily during that period, so as to reverse the fan. Under this status of the record, it was a question for the jury. In the case of *Wood v. Louisville & Nashville R. Co.* (C. C.) 88 Fed. 44, District Judge Hammond, said:

"It is a danger that does not probably show itself until an accident like this brings it into prominence, either to the railroad owner who operates the road or to the man who originally constructed it. They were thinking of establishing a clearance for the cars, and not for a man climbing the ladders at the moment of passing the chute. That danger was probably not thought of by anybody; not by the constructors any more than by the plaintiff. It is a danger that might arise, and possibly did arise, in this case, because the car on which he was mounted was wider than ordinary cars, or perhaps the ladder might have been constructed so as to have been further away from the side of the car than in the ordinary construction of ladders. Many differences of this kind might appear to make a danger in this particular conjunction of a brakeman on a ladder and a cattle chute too near the track that would not be observable to any ordinary intelligence or observation. The case was fairly left to the jury, and they have decided these questions of negligence and contributory negligence against the defendants, and I think properly so."

Further in the same opinion, the court said:

"The fact that no accident of this kind had happened before upon the railroad, and that trains were constantly passing this chute without the development of this danger, brings it directly within the class of what we may call 'concealed dangers.' This danger was lurking for years without its being known."

See, also, *Bunker Hill & Sullivan Mining & Concentrating Co. v. Jones,* 130 Fed. 813, 65 C. C. A. 363; *C., O. & G. R. Co. v. Holloway,* 114 Fed. 458, 52 C. C. A. 260; *C. G. W. R. Co. v. Price,* 97 Fed. 423, 38 C. C. A. 239.

3. Under this record, is the court warranted in saying, as a matter of law, that the intestate was guilty of contributory negligence in firing this "windy shot"? We think not. There was a conflict in the evidence on this point. In the case of *Sioux City & Pac. R. Co. v. Stout,* 84 U. S. (17 Wall.) 657, 21 L. Ed. 745, the court said:

"If, upon any construction which the jury was authorized to put upon the evidence, or by any inference they were authorized to draw from it, the conclusion of negligence can be justified, the defendant was not entitled to this order, and the judgment cannot be disturbed. To express it affirmatively, if from the evidence given it might justly be inferred by the jury that the defendant, in the construction, location, management or condition of its machine had omitted that care and attention to prevent the occurrence of accidents which prudent and careful men ordinarily bestow, the jury was at liberty to find for the plaintiff."

In the case of *Railway Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, the court said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonably prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

Under the laws in force in the Indian Territory, the question of contributory negligence as a matter of defense must be sustained by a preponderance of evidence. *Eddy v. Wallace,* 49 Fed. 801. 1 C. C. A. 435; *Berry v. Ry. Co.* (C. C.) 70 Fed. 193; *B. & O. Ry. Co. v. Burris* 111 Fed. 882, 50 C. C. A. 48. The plaintiff is not even required in his declaration or petition by appropriate allegation to negative contributory negligence or to offer proof to that

.end.  *C., G. W. Ry. Co. v. Price,* 97 Fed. 423, 33 C. C. A. 239; *Ry. Co. v. Parks,* 114 Fed. 161, 52 C. C. A. 117.

4. The defendant (plaintiff in error) offered to prove by one of its employees that within 20 or 30 minutes after the accident in a conversation with Jenkins near the entrance of the mine whilst he was then in a semi-conscious, or what was termed by the witness as a flighty or groggy, condition, that he said: "I asked Jenkins where his buddy was, and he stated, 'He is on ahead, dead, all right. My lower limbs are paralyzed. I told him not to fire the shot, but he said he would go ahead and fire it anyhow.'" Was it a part of the *res gestae?* If so, it should have been admitted. Otherwise, not. Was the alleged statement spontaneous and so connected with the main fact under consideration as to illustrate its character, or to form in conjunction with it one continuous transaction? Jenkins was a servant of the master and may have fired this shot that caused the accident and when confronted with his co-employee, with the inquiry as ·to where his "buddy" was, being apprehensive as to the consequence of his act, he may have sought to escape such responsibility by placing it upon his co-employee. It does not appear that the ruling of the court in the exclusion of this evidence under the circumstances was error. *Gowen v. Bush,* 76 Fed. 349, 22 C. C. A. 196; *Fredenthal v. Brown & McCabe,* 52 Or. 33, 95 Pac. 1116; *L. & N. R. Co. v. Pearson, Adm'r,* 97 Ala. 211, 12 South. 176.

The instruction given by the court fairly presented the issues in the case. Those refused, which might have been given, to that extent were substantially and fairly covered by the general instructions. In this, there is no error.

5. Was the negligence of the master the proximate cause of the intestate's death? This may be established by circumstantial evidence, and is a question of fact for the jury. From all the evidence in the case, may it be fairly inferred that intestate's death was the result of the failure of the defendant to take some precaution which in the exercise of ordinary care it should have taken? In the case of *C., O. & G. R. Co. v. McDade et al.,* 112 Fed. 888,

50. C. C. A. 591, Lurton, Circuit Judge, in speaking for the Sixth Circuit Court of Appeals, said :-

"The whole case of the plaintiff below was founded upon the theory that the deceased had been killed by coming in collision with an overhanging water spout at the Goodwin tank. The case was put to the jury by the trial judge alone upon this theory, for the jury were told that 'if he was not struck by the water spout, or the chain depending from it, in such a way as to cause his fall from the car, your verdict should be for the defendant company.' While it cannot be said the evidence demonstrates that the deceased was caused to fall from his post by reason of a collision with the water spout at Goodwin, yet the facts and circumstances pointing to that conclusion were quite sufficient to justify a verdict based upon such an assumption. We have reached this conclusion from an attentive examination of the evidence, and are content to state this result without burdening this opinion with the details, or an argument based on facts of interest only to the particular litigants here necessary."

In the case of *Reed v. Stockmeyer,* 74 Fed. 186, 20 C. C. A. 381, the court said:

"So, also, is it the duty of the master to provide a reasonably safe place in which the servant may perform his work, and to keep it in such suitable condition. This duty is not absolute, but relative. It is measured by the nature and character of the employment, the location of the premises and their surroundings. There are employments that of themselves are necessarily dangerous, in connection with which no position can be made secure. In such case the law requires of the master that he shall use ordinary care that the dangers of the employment are not unnecessarily enlarged; that he shall take proper care to furnish such safeguards as are customarily employed in the performance of like hazardous service, so that the servant, exercising proper care, may render his service without exposure to dangers that are not within the obvious scope of the employment as usually carried on."

In the case of *C., O. & G. R. Co. v. McDade, supra,* the court quoted with approval the foregoing excerpt, and further said:

"The conclusive evidence was that such swinging spouts should be so constructed as to clear cars without endangering employees in the discharge of their duties on the roofs of passing trains. To do this, it was, perhaps, not always necessary or customary that the spouts should, when not pulled down, hang in a posi-

tion absolutely vertical to the tank.    But on all of the evidence
it was made to appear most conclusively that they should not
be placed in such close proximity to the track, or hang, when
not in use, at such an angle, as to endanger employees in the
proper discharge of their duties on the top of passing trains.    It
may be that the evidence was conflicting as to whether this par-
ticular spout was a peril to brakeman on top of the cars of the
usual height.    But it was in evidence that cars built to carry
furniture are somewhat higher above the track and somewhat
wider than ordinary freight trains, and that such cars were
well known in the traffic, and frequently found in the trains on
this railroad.    The evidence clearly established that neither ne-
cessity nor convenience required that such spouts should be so
constructed as to constitute a dangerous obstruction to employees
on any cars known to the traffic.    Judge Hammond, who tried
the case in the circuit court, upon this subject summed up the
law tersely, by saying to the jury, in the justification of his in-
struction, that: 'It is so simple a task, one so devoid of all ex-
igencies of expense, necessity, or convenience, so free of all con-
sideration of skill except that of the foot rule, and so entirely
destitute of any element of choice or selection, that not to make
such a construction safe for the brakeman on the trains is a con-
viction of negligence.'    It was the duty of the company to use
ordinary care to see that the dangers incident to the employ-
ment were not unnecessarily enlarged, and the servant thereby
exposed to perils which could have been guarded against by the
exercise of that degree of care due to employees."

The judgment in the McDade Case was later affirmed by the
Supreme Court of the United States (*C., O. & G. R. Co. v.
McDade*, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *C. O. & G. R.
Co. v. Holloway*, 114 Fed. 456, 52 C. C. A. 260; *Wabash Screen
Door Co. v. Black*, 126 Fed. 721, 61 C. C. A. 639; *Cecil v.
Amer. Sheet Steel Co.*, 129 Fed. 542, 64 C. C. A. 72).

The theory of the plaintiff was that the intestate's death re-
sulted from suffocation by smoke, fumes, foul air, and presence
of gases driven back into the interior of the mine and condensed
therein by the reversal of the fan.    There being substantial evi-
dence tending to support plaintiff's theory, it was a question for

the jury's determination. The judgment of the lower court is affirmed.

All the Justices concur.